626 F.2d 985

**UNITED STATES of America,**

v.

**James E. FULCHER, Jr., Appellant.**

**No. 76–1714.**

United States Court of Appeals, District of Columbia Circuit.

Argued June 3, 1979.

Decided March 14, 1980.

Rehearing Denied April 17, 1980.

James E. Fulcher, Jr., pro se.

John H. E. Bayly, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty. at the time the briefs were filed, John A. Terry and John T. Kotelly, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Carl S. Rauh, Asst. U. S. Atty., Washington, D. C., entered an appearance for appellee.

Before LEVENTHAL * and ROBB, Circuit Judges, and OBERDORFER **, United

---

* Circuit Judge Leventhal was a member of the panel which considered this case but died before the opinion was issued.

** Sitting by designation pursuant to 28 U.S.C. § 292(a).

States District Judge for the District of Columbia.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

In the District Court the defendant Fulcher was convicted on an indictment in several counts charging him with mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343) and false pretenses (22 D.C. Code § 1301). The court imposed sentences on all the counts and provided that sentences on the false pretenses counts would be served consecutively to the sentences on the mail and wire fraud counts.

At trial the defendant was represented by retained counsel but also participated *pro se*. On this appeal he filed a brief *pro se* and orally argued his own case.

The government's case at trial was that through one or more so-called "home improvement" companies the defendant schemed to defraud and did defraud contractors, suppliers, and customers who paid for projected home improvements. The mail and wire fraud counts of the indictment recite that the defendant carried out his scheme by means of misrepresentations concerning the ability, experience, financial status, and organization of his companies, identified as Duraseal Industries, Inc., American General Home Improvement Company, Inc., and Massland Corporation. The alleged false representations are set out in detail in the first count charging mail fraud. Counts two and three, alleging mail and wire fraud, respectively, reallege and incorporate by reference the detailed allegations of count one. The false pretenses counts, four through eight, allege only that the defendant obtained specified sums of money from certain named customers by false representations, upon which they relied, and that "[t]he representations referred to herein are the false representations that the defendant, through American General and Massland, intended to perform the home improvement work contracted for by the named customer." Citing *Chaplin v. United States*, 81 U.S.App.D.C. 80, 157 F.2d

697 (1946), Fulcher moved the District Court to strike counts four through eight on the ground that those counts failed to state an offense. His motion was denied.

The defendant attacks his conviction on a number of grounds. Although we have considered them all we deal here with only those which require discussion.

[1] Relying on *Chaplin v. United States, supra*, Fulcher says that a false representation that he intended to perform home improvement work, as alleged in counts four through eight, is not sufficient to support a conviction of false pretenses. The *Chaplin* case holds that such a representation of present intention to perform in the future is not enough because it does not relate to a present or past existing fact. 81 U.S.App. D.C. at 81, 157 F.2d at 698. Although the government attacks the rationale of *Chaplin*, that case states the law of this circuit and we are bound by it.

Apparently recognizing that counts four through eight standing alone do not meet the test of *Chaplin*, the government in its brief argues that

> [A]ppellant's obvious error in argument is to focus on the condensed language of counts four through eight to utter exclusion of the lengthy and precise litany of misrepresentations set forth in count one and thereafter necessarily incorporated into counts four through eight by direct reference to appellant's corporate activity. Read as an integral document, the indictment charges misrepresentation by appellant's *modus operandi* through his corporate creatures.

(Br. p. 69)

The difficulty with this argument is that unlike counts two and three, counts four through eight do not refer to the allegations of misrepresentation contained in count one, nor is anything said in counts four through eight about the defendant's representations concerning the qualifications of his corporations; the only misrepresentation alleged is that he falsely represented his intention "through American General and Massland to perform the home improvement work contracted for."

The allegations of the first count are not "necessarily incorporated" in the others. Each count in an indictment is regarded as if it was a separate indictment. *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). Each count must stand on its own, and cannot depend for its validity on the allegations of any other count not specifically incorporated. *United States v. Huff*, 512 F.2d 66, 69 (5th Cir. 1975); *United States v. Gordon*, 253 F.2d 177, 180 (7th Cir. 1958); *United States v. Pearce*, 275 F.2d 318 (7th Cir. 1960); *see* Fed.R.Crim.P. 7(c). The false pretenses counts cannot absorb by osmosis the allegations of the mail fraud count.

The government cites *Randle v. United States*, 72 U.S.App.D.C. 368, 113 F.2d 945, *cert. denied*, 311 U.S. 683, 61 S.Ct. 64, 85 L.Ed. 440 (1940), for the proposition that the indictment must be read as "an integral document." What the government overlooks is that the court in *Randle* was considering an indictment in a single count which the court said "plainly described numerous false representations of present and past facts." 72 U.S.App.D.C. at 370, 113 F.2d at 947. The government also overlooks the *Randle* court's reference to "the familiar proposition that to be the proper subject of an indictment for obtaining money by false pretenses the misrepresentations must relate to present or past facts, as distinguished from something to take place in the future," a proposition which the court said "is correct." *Id.*

In summary, we hold that the false pretenses counts, counts four through eight in the indictment, fail to state an offense. The defendant's conviction on those counts must be reversed and they must be dismissed.

The defendant says it was error to make the sentences on the false pretenses counts run consecutively to those on the mail and wire fraud counts. Our conclusion that the false pretenses counts must be dismissed makes it unnecessary to reach this question.

The defendant in his brief and argument on this appeal represented that while he and his counsel were not present, and while the jury was deliberating, the court in response to two notes from the jurors sent to the jury room certain documentary evidence. The government concedes that this occurred during the absence of the defendant and his counsel, but says that the error, if any, was harmless.

The record filed in this court reflects that the jury sent out two notes at 4:32 P.M. on April 13, 1976. One note said, "We request the contract documents," and the other, "We would like to see mail fraud documents." The notes are in the record. On each is a notation "4:32 4-13-76".

The stenographic transcript reflects that the jury retired to consider its verdict at 3:43 P.M. on April 13, and were excused at 5:37 P.M. with instructions to return on the following morning. Nothing appears in the transcript about the notes from the jury or the sending of exhibits to the jury room. The transcript does show, however, that when the jury retired at 3:43 P.M. the court instructed defendant's counsel as follows: "Mr. Carmody . . . you must stay . . . I don't anticipate a verdict between now and 5:30 but if, for example, they come, they send in a note or something of that sort, I want you to be here." Mr. Carmody responded, "All right." (Tr., Apr. 13, 1976, p. 87) The court also instructed the defendant to "be present at all times during the deliberations and if you are not present and communication comes in or a verdict is returned, I will accept the communication and I will accept the verdict without your being here." The defendant responded, "Yes, sir." (Tr., Apr. 13, 1976, p. 89)

The defendant says he or his counsel was entitled to be present when response to the jury's notes was made, so as to know precisely what documents were sent to the jury. The government in its brief points out that in his closing argument to the jury counsel for the defendant urged the jurors "to look at those contracts . . . look carefully at the complete jobs file and look carefully at all of these files which have the customer's account cards." (Tr. Apr. 13, 1976, pp. 30–33) The government notes also that in his charge to the jury the

district judge told the jurors that if they indicated a desire to see any of the exhibits they might see them. (Tr., Apr. 13, 1976, p. 85)

We were unwilling to review this matter on a record that was silent concerning the circumstances under which documents were sent to the jury. We therefore remanded the record in the case to the District Court for a hearing and findings on that subject. Pursuant to our remand the district judge heard testimony from the defendant Fulcher, his former counsel Kevin Carmody, the prosecuting attorney, the courtroom clerk, and four jurors. On the basis of this testimony the court made findings of fact.

The court found that the jurors' two notes were handed by the foreman to the United States Marshal, who in turn delivered them to the courtroom clerk. The clerk "reviewed the exhibit list and identified the exhibits which had been admitted into evidence. She then determined and assembled the documents requested by the jury, gave them to the Marshal, who in turn delivered them to the jury room." The clerk did not inform the court, counsel, or the defendant that the notes had been received or that documents had been sent to the jury. She explained that if the request for exhibits had not been "clear or plain on its face" she would have consulted the court. It was the policy of the court however that the courtroom clerk was required to inform the court of all notes requesting exhibits, even though a prior understanding with respect to such requests had been reached with counsel.

The court found that when the jury was excused on the afternoon of April 13, 1976, to return the next day, it was apparent to counsel and the defendant that the jury had received certain exhibits, for at that time, in the presence of the defendant and his counsel, the court directed the Marshal and the clerk to collect all the exhibits which the jurors had received. The clerk and the Marshal were ordered to make these exhibits available to the jury when it returned.

Finally, the court found "that with only limited exceptions, the admitted documents of both the government and the defendant fell into the category of either contract or mail fraud documents," and that the documents received by the jury were "only those admitted and about which they had already heard testimony." The court concluded that any prejudice to the defendant resulting from the procedure followed by the courtroom clerk "was at most minimal."

■ The response to the jurors' notes required the courtroom clerk to exercise her judgment in determining which of the exhibits were "mail fraud" or "contract" documents. In these circumstances counsel for the defendant should have been told of the jury's request. Informed of the notes, counsel would have been in a position to make certain that all the requested documents, and no others, went to the jury room. The clerk's unilateral action deprived counsel of this opportunity and was error. *Rogers v. United States*, 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1 (1975); Fed.R.Crim.P. 43; *Shields v. United States*, 273 U.S. 583, 587–88, 47 S.Ct. 478, 479, 71 L.Ed. 787 (1927); *United States v. Schor*, 418 F.2d 26, 29–30 (2d Cir. 1969); *Walker v. United States*, 116 U.S.App.D.C. 221, 223, 322 F.2d 434, 436 (1963).

Notwithstanding the error in failing to notify counsel, it is plain that the defendant was not prejudiced. The District Court found that almost all the exhibits were either contract or mail fraud documents. There were only a few limited exceptions, none of which the district judge found to have been significant. Furthermore, when the defendant and his counsel learned on the afternoon of April 13 that the jury had received certain exhibits, and that they would be returned to the jury on the following day, no objection was made. In short, the record excludes any reasonable possibility of prejudice to the defendant, and therefore reversal is not required. *Walker v. United States*, 116 U.S.App.D.C. at 222–23, 322 F.2d at 435–36 (1963).

■ The defendant argues that he was denied due process and a speedy trial by the government's failure promptly to produce certain corporate records which he needed in the preparation of his defense. The record discloses however that the defendant

himself requested a number of continuances and that on May 2, 1975, he explicitly waived any demand for a speedy trial. Moreover, it appears that although there was some confusion or misunderstanding about what records were relevant to the case the prosecutors made no attempt to deny access to any records and the defendant ultimately secured all that he wanted. We must reject the defendant's contention.

Fulcher did not testify at trial, but argued the case before the jury. Although he did not ask the court to instruct the jury concerning his failure to testify the court did so on its own motion. He now contends that by giving this instruction the court undermined his credibility and impaired his defense of good faith. We think however that *Lakeside v. Oregon*, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978), is a complete answer to the defendant's argument.

The judgments on counts four through eight are reversed with instructions to dismiss those counts. The judgments on the remaining counts are affirmed.

*So ordered.*