Ervin **BLACKLEDGE**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 80–1068.

District of Columbia Court of Appeals.

Submitted May 13, 1981.

Decided June 30, 1982.

John T. Fowler, Washington, D. C., appointed by this court, was on the brief for appellant.

Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, and John A. Terry, Alan D. Strasser, and J. Alvin Stout III, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEBEKER and HARRIS,* Associate Judges, and GALLAGHER, Associate Judge, Retired.

GALLAGHER, Associate Judge, Retired:

Appellant, Ervin Blackledge, was convicted of receiving stolen property (Shell credit card), D.C.Code 1981, § 22–2205, and attempted false pretenses, id. §§ 22–103, –1301. This appeal is based primarily on the ground that there is insufficient evidence to support appellant's conviction on either count.[1] Specifically, appellant contends that the government failed to prove beyond a reasonable doubt that appellant had the required intent to commit the crimes of receipt of stolen property and attempted false pretenses. Appellant also contends that, even if all the facts in this case are viewed in the light most favorable to the government, the government could not prove that appellant obtained property in reliance on the charged misrepresentation—that is, appellant's implicit representation that he was authorized to use the Shell credit card—and that, therefore, the government could prove neither the completed crime of false pretenses nor the crime of attempted false pretenses. We reject appellant's arguments and affirm his conviction.

I.

The government presented evidence that, in September 1979, while shopping in a supermarket in McLean, Virginia, Ann Fleury placed her purse on a shopping cart and then turned away from the cart. She returned minutes later to find her purse gone. Among the items in the stolen purse was a Shell credit card bearing the name of her husband, G. J. Fleury, M.D., on its face, and her signature on the back of the card.

On May 21, 1980, appellant drove into the Parkway Shell station in Northeast Washington, D.C. and asked James Jones, a station attendant, for ten dollars worth of gasoline. After Jones put the gasoline in the car, appellant presented him with the Fleury credit card. Jones checked the Fleury credit card against a list of "bad cards", discovered that the Fleury credit card was on the list of "bad cards", and reported his discovery to a fellow attendant. He then told appellant that the card was "bad" and that he would have to pay for the gasoline in cash. Appellant became angry and attempted to drive away. After he moved the car approximately three feet, his path was blocked by Officer Hawkins, who had been flagged over by Jones' co-worker. Officer Hawkins placed appellant under arrest and advised him of his rights. Later, at the police station and again at trial, appellant claimed that a woman whom he had known for about three years named Shirley Brown, had given him the credit card. Appellant's explanation for his possession and use of the credit card was that Ms. Brown had given him the Shell credit card, and that she assured him that the card belonged to her uncle and had not been stolen, and that he could use the card to purchase gasoline.

II.

Both the crime of receiving stolen property and the crime of attempted false pretenses require that appellant possessed a fraudulent intent. In prosecutions for receiving stolen property, the government must prove that a (1) stolen (2) item of

---

* Judge Harris did not participate in the decision of this case.

1. Appellant makes two other arguments. The government requested a missing witness instruction because appellant failed to call Shirley Brown, the former neighbor and friend, who allegedly had given appellant the Fleury credit card, as a witness. Over appellant's objection, the trial court gave the missing witness instruction. Appellant argues that by giving the missing witness instruction, the trial court committed reversible error. As will appear from the facts, this contention is insubstantial. Furthermore, if we were to assume, arguendo, that the trial court erred in giving the instruction, such error could not constitute prejudicial error requiring reversal on the facts of this case. D.C. Code 1981, § 11–721(e). Appellant also argues that the trial court committed prejudicial error by permitting the government to cross-examine appellant about matters that were beyond the scope of direct examination. This argument is without merit.

value[2] (3) was received by the defendant (4) with an intent to defraud and (5) while the defendant knew or had reason to know that the item was stolen. *Brock v. United States*, D.C.App., 404 A.2d 955, 958 n.2 (1979); *Charles v. United States*, D.C.App., 371 A.2d 404, 406 (1977). To convict a defendant for the crime of false pretenses, the government must prove that the defendant made a false representation[3] with knowledge of its falsity and an intent to defraud; that the defrauded party relied on the misrepresentation; and that the defendant obtained (title to) something of value as a result of the misrepresentation. *Hymes v. United States*, D.C.App., 260 A.2d 679, 680 (1970). *See generally* W. LaFave & A. Scott, Criminal Law § 90, at 655 (2d ed. 1972). To prove the crime of attempted false pretenses, the government must prove, as in any other attempt case, that appellant had the intent to commit the crime and that he performed some act towards its commission. *Marganella v. United States*, D.C.App., 268 A.2d 803, 804 (1970).

Appellant contends there was insufficient evidence to establish that he received the credit card with guilty knowledge that it was stolen or with a fraudulent intent. He contends that he simply presented a card which he thought he was authorized to use, and that by using the card, he had no intent to defraud the gas station attendant and the Shell station. The essence of appellant's argument is that, because appellant gave an explanation for his allegedly innocent possession and use of the stolen credit card, he could not have had the requisite intent for receiving stolen property or for attempted false pretenses. This argument is clearly without merit.

█ It is settled that in evaluating appellant's sufficiency claim, we must review the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences. *See, e.g., Calhoun v. United States*, D.C.App., 369 A.2d 605, 607 (1977). The government need not negate every possible suggestion of innocence. *Chaconas v. United States*, D.C.App., 326 A.2d 792, 798 (1974). "To sustain a conviction the evidence need be 'such evidence that reasonable persons *could* find guilt beyond a reasonable doubt. It is not a requirement that the evidence *compel*, but only that it is capable of or sufficient to persuade the jury to reach a verdict of guilt by the requisite standard.'" *United States v. Harris*, 140 U.S.App.D.C. 270, 284 n.41, 435 F.2d 74, 88 n.41 (1970), *cert. denied*, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971) (*quoting Crawford v. United States*, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334

2. Although value is an essential element of the misdemeanor crime of receiving stolen property, no specific minimum value need be established. *See Jones v. United States*, D.C.App., 345 A.2d 144, 145 (1975). It is enough that the government show that the stolen property "had some real value to the owner." *Id.* Thus, we have held that a "currently usable credit card," which was of obvious monetary value to its owner, constitutes valuable property within the meaning of § 22–2205. *In re V. L. M.*, D.C.App., 340 A.2d 818, 820 (1975). *Cf.* W. LaFave & A. Scott, Criminal Law § 90, at 665 (1972) (notes that written instruments and documents frequently constitute value under false pretenses statutes). Had the Fleury credit card not been stolen and reported stolen, it would have been valid through August 1981. In this case, the credit card was "currently usable" at the time it was stolen, and had the appearance of being valid at the time it was presented to the Shell attendant. Thus the Fleury credit card was property of some value within § 22–2205.

3. The false representation may be oral or written, or it may be implied from conduct. *See generally* C. Torcia, 3 Wharton's Criminal Law § 426, at 464 (14th ed. 1980). It is generally held, however, that the false representation must relate to an existing or past fact and that a false promise to produce a future result does not constitute a false representation within the meaning of the pertinent statute. *See, e.g., United States v. Fulcher*, 200 U.S.App.D.C. 121, 626 F.2d 985, *cert. denied*, 449 U.S. 839, 101 S.Ct. 116, 66 L.Ed.2d 46 (1980). *Chaplin v. United States*, 81 App.D.C. 80, 157 F.2d 697 (1946). *See generally* 3 Wharton's Criminal Law, *supra* §§ 430–31. *Cf.* W. LaFave & A. Scott, *supra* note 2 at 627 (stating that there is authority that for larceny by trick, as distinguished from false pretenses, a false promise— *i.e.*, a promise which the promisor, at the time he makes it, does not intend to keep—is sufficient).

(1967) (emphasis in original). We, therefore, give "full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact," *Byrd v. United States,* D.C.App., 388 A.2d 1225, 1229 (1978), *quoted in Sousa v. United States,* · D.C.App., 400 A.2d 1036, 1043 (1979).

This court previously has held that a jury reasonably may infer the requisite state of mind for the offense of receiving stolen property where evidence reveals defendant's unexplained (or unsatisfactorily explained) possession of recently stolen property. *See, e.g., Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Charles v. United States, supra* at 406 (theft occurred 23 days before arrest of appellant for receiving stolen property). *Cf. United States v. Johnson,* 140 U.S.App. D.C. 54, 60 n.40, 433 F.2d 1160, 1166 n.40 (1970) (conviction of grand larceny affirmed where government relied heavily on possession of property stolen approximately *nine months* earlier; court observed that the inference pales in direct proportion to the passage of time). *But see Brock v. United States, supra* at 958 (the fact that Master Charge card was stolen *thirty months* prior to appellant's arrest, while in possession of the card, is insufficient, standing alone, to support an inference that appellant knew he was receiving stolen property) (citing *United States v. Taylor,* 480 F.2d 154 (9th Cir. 1973) (two years not "recent" so as to support conviction involving credit card)). This court also previously has affirmed a conviction for attempted false pretenses where appellant presented the credit card of a woman he did not know to a hotel desk clerk and later testified that a friend loaned him the credit card. *See Marganella v. United States, supra* at 803.

■ In this case, there was sufficient proof to permit the jury to infer appellant's guilty knowledge that the card was stolen, as well as his fraudulent intent to use the card. Approximately nine months after the theft of the credit card, appellant was caught as he attempted to utilize the credit card to complete the purchase of gasoline.

This credit card bore the name of a doctor whom appellant did not know and the signature of the doctor's wife. When the station attendant informed appellant that the card was "bad" and that he would have to pay in cash, appellant became angry and started to leave the station. A police cruiser blocked his path and appellant's companion ultimately paid for the gasoline. Appellant claimed that the credit card had been given to him by Shirley Brown, who did not testify at trial, and that it belonged to her uncle. Appellant admitted, however, that he had never met her uncle and made no arrangements to repay him. The jury apparently did not accept appellant's explanation for his possession and use of the credit card and reasonably inferred the requisite intent for both crimes from his possession of the stolen property and other circumstances.

### III.

Appellant makes an additional argument to attack his conviction for attempted false pretenses. The first portion of appellant's argument is based on a narrow view of what occurred at the gas station and of what can constitute the completed crime of false pretenses. It is appellant's position that because he presented the Fleury credit card just after rather than just before the gasoline was pumped into his car, the gas station attendant did not rely and could not have relied on any misrepresentation associated with the presentation of the credit card. *See Hymes v. United States, supra* at 680 (reliance is an essential element of the crime of false pretenses). Therefore, appellant argues, even if the gas station attendant had not checked the "bad card" list and appellant had left the gas station with the gasoline under the recited circumstances, appellant could not be convicted of the completed crime of false pretenses. The second portion of appellant's argument is essentially that, because the factual sequence in this case and the attendant's ultimate discovery that the credit card was "bad" make it impossible for there to have been actual reliance and for appellant to have been

convicted of the completed crime of false pretenses, appellant cannot be convicted of an attempt to commit that crime—that is, he cannot be said to have taken a step toward the completion of the crime of false pretenses. We reject this argument.

■■■ Appellant was charged with attempted false pretenses. The government was therefore not required to prove the crime of false pretenses, but rather "an intent to commit it, the doing of some act toward its commission and the failure to consummate its commission." *Marganella v. United States, supra* at 804. "And it is not necessary in order to establish an intent that the potential victim was deceived and had parted with [something of value]." *Id.,* (citations omitted). Therefore, the focus must be placed on appellant's intent. Whether Mr. Jones relied on his representations to his detriment is essentially immaterial in the context of an attempted false pretense charge.

In resolving this issue, the incident at the gas station must be viewed in its entirety. Appellant made an implicit representation that he would render lawful payment when he drove into the station and asked Mr. Jones for $10 worth of gasoline. In accordance with common practice among gasoline stations, of which this court may take judicial notice, the means of payment apparently was not established before the gasoline was placed in the car. However, since the gasoline was placed in the car on the basis of an implied agreement that lawful payment would be made, it is equally clear that appellant's authority to assert ownership or title over the gasoline was contingent of such lawful payment. Therefore, when appellant produced the stolen credit card and falsely represented that he was the owner of that card and was authorized to use it, he stood in the same position as an individual who has selected merchandise in a store, placed it in a cart, taken it to the checkout counter where it is rung up on the cash register and placed in a bag, and is then required to make payment before he can assert ownership. *See Henson v. United States,* D.C.App., 287 A.2d 106 (1972). At the time appellant produced the credit card and made his false representations, he was merely in possession of the gasoline. In making his false representations, appellant was attempting to obtain title to the gasoline so that he could drive his car away from the station. Had Mr. Jones not discovered the stolen nature of the card, appellant would perhaps have been given a semblance of voidable title and permitted to leave. Mr. Jones made it quite clear in his testimony that he had no intention of letting appellant leave the station without paying and planned to siphon the gasoline from the car. Ownership and the ability to use the gasoline was clearly of value, and in a very practical sense, was what appellant sought when he entered the gas station. In short, appellant obtained a limited, contingent possessory right in the gasoline prior to his misrepresentation. The misrepresentation was made to complete the transaction and effect the transfer of title.

This court has recognized that the false pretenses statute was enacted before credit cards were widely in use and that as a result "this new mode of possible criminal activity does suggest that the form of proof will differ from that usually found in past cases." *Hymes v. United States, supra* at 680. In *Hymes* the defendant was convicted of seven counts of false pretenses involving the unauthorized use of a stolen gasoline credit card. The government's case rested largely on the credit card receipts linked to appellant by handwriting analysis. The gas station attendants were not able to testify to the individual transactions. This court upheld the convictions, holding that it could be inferred from the credit receipts that the gasoline was provided on reliance on the validity of the card and appellant's authorized use. *Accord, Teves v. State,* 237 Md. 653, 207 A.2d 614 (1965). In the instant case, the only thing that averted a completed false pretense was Mr. Jones' discovery that the card was stolen. In *Hymes* this court did not concern itself with whether Mr. Hymes presented his stolen card before or after the gasoline was placed in his car. Rather, the court looked at the overall situation and held that it could be inferred that

the attendants relied on the false representations.

■ We hold that where a false pretenses charge stems from the unauthorized use of a credit card, it is not necessarily significant that the credit card was presented immediately after rather than just prior to receipt of the goods in what is virtually a simultaneous exchange.[4] An initial implicit false promise of lawful payment coupled with the presentation of a stolen credit card, which occur in a single and continuous transaction, can support a conviction for false pretenses or attempted false pretenses, provided that together they induce or would have induced the victim to surrender title to the property.[5]

In this case, a reasonable jury could conclude that appellant was guilty of receiving stolen property (*i.e.*, Shell credit card) and of attempted false pretenses. Appellant took steps toward the commission of the crime of false pretenses by driving into the Shell station and presenting the Fleury credit card to complete his purchase of gasoline. The fact that there was no ultimate reliance on the Fleury credit card does not preclude the jury from reasonably concluding that appellant committed the offense charged. We affirm appellant's conviction on both counts.

*Affirmed.*

---

**4.** *See also Locks v. United States*, D.C.App., 388 A.2d 873, 874–77 (1978) (focuses broadly on an unconditional sale of merchandise in exchange for a check); *Henson v. United States, supra* at 108 (conviction for false pretenses affirmed; facts indicated that appellant had some control over the groceries before writing a worthless check for the items he was about to remove from the store).

**5.** The information in this case stated that on May 21, 1980, appellant committed:

Attempted False Pretenses—in that, with intent to defraud, he falsely represented, knowing the representations to be false, that he was Dr. G. J. Fleury and was the person authorized to use Shell credit card No. 682–455–902 none of which was true; such false representations being made to James Jones (Manager) Shell Station in an attempt to cause [him] to rely on them as true and to deliver to the above defendant property of value. . . .