Harold G. CASH, Appellant,

v.

UNITED STATES, Appellee.

No. 96–CM–58.

District of Columbia Court of Appeals.

Argued Dec. 5, 1996.
Decided Sept. 18, 1997.

Dorsey G. Jones, appointed by the court, Washington, DC, for appellant.

Marian L. Borum, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, FARRELL, and KING, Associate Judges.

TERRY, Associate Judge:

After a non-jury trial, appellant was convicted of second-degree theft.[1] His only contention on appeal is that the evidence was

1. D.C.Code §§ 22–3811, 22–3812(b) (1996).

insufficient to sustain his conviction. We affirm.

I

Angela King met appellant in 1994 while she was in the process of buying a house through a District of Columbia housing assistance program. At that time appellant was employed by the District of Columbia as a housing inspector; Ms. King testified that he also told her he was a licensed and bonded contractor. After her application for assistance had been approved, Ms. King asked appellant to inspect her prospective home to ensure that it complied with the housing code. He inspected the home and recommended several repairs and improvements, including moving the hot water pipes in the basement, building a deck, and installing new front and back doors to prevent drafts. In January of 1995, Ms. King signed a contract with appellant, agreeing to pay him approximately $15,500 for home improvements.

On January 28, 1995, Ms. King wrote a check to appellant for $5,186 (one-third of the total amount) and went with him to her bank so that he could cash it. She agreed to give him the cash immediately because he said he needed the money to pay his crew. Appellant never told her that the work on her house might be delayed because his crew was busy on other jobs, nor was she under any impression to that effect.

After a few weeks, Ms. King became worried because appellant had not started any work on her home and had failed to return her telephone calls. He did bring a jackhammer to the house and left it in the basement, but it sat there untouched for more than two months. At some point Ms. King checked with the Department of Consumer and Regulatory Affairs and found out that the contractor's license number appellant had given her was not a valid number. In the early part of March Ms. King went to the police and spoke with Detective Gina Blocker of the Check and Fraud Division. Detective Blocker verified that appellant was not a licensed home improvement contractor. She tried calling him on the phone several times, but he did not return her calls. After further investigation Detective Blocker obtained a warrant for appellant's arrest, and he was arrested and charged with theft.

The defense presented a copy of the contract which was different from the one introduced by the government. The defense version contained an additional handwritten note stating, "Due to prior pending contract obligations, starting and completion dates are subject to change." Ms. King testified that this language was not in the contract when she signed it; appellant, however, testified that it was.

Appellant denied that he ever told Ms. King he had a home improvement contractor's license. In addition, he said he had to subcontract the work because of prior obligations. He arranged to hire a subcontractor and completed some preliminary drawings and measurements. He admitted knowing that Ms. King wanted to terminate the contract in February and testified that he told her he would return her money once she requested termination of the contract in writing, but she never did so.

On rebuttal, Ms. King testified that she had never met or heard of the subcontractor whom appellant asserted he had hired, nor had she ever been told that a subcontractor would be doing the work.

Expressly crediting the testimony of Ms. King, the court summarized that testimony and found

> that the government has proved beyond a reasonable doubt that the defendant wrongfully obtained the property of another, that at the time he obtained the property he specifically intended to deprive the owner of her right to the property and to make use of the property for himself without authority or right, and that when he obtained the property it [had] value and the value of the property was … $5,186. And the Court finds that the property was obtained by false pretense, and the false pretense was that the defendant intended to complete contract work which he never intended to undertake. And based upon the foregoing, the Court finds the defendant guilty.

## II

██ Relying primarily on *Blackledge v. United States,* 447 A.2d 46 (D.C.1982), appellant contends that the evidence was insufficient to sustain his conviction. He asserts that the government failed to prove beyond a reasonable doubt that he made a false representation to Ms. King concerning a past or present fact, that Ms. King gave him money in reliance on any such representation, and that he intended to defraud her at the time he obtained the money from her. *See id.* at 49 & n. 3. Appellant's reliance on *Blackledge* is misplaced, however, because *Blackledge* was an appeal from a conviction of the crime of false pretenses, in violation of the former D.C.Code § 22–1301. That statute and several others were repealed in 1982, and in their place the Council of the District of Columbia enacted a comprehensive statute known as the Theft and White Collar Crimes Act of 1982. D.C. Act 4–238, 29 D.C. Register 3976, *renumbered as* D.C. Law 4–164, 29 D.C. Register 5386 (1982). The offense previously known as false pretenses is now covered by the general theft statute, D.C.Code § 22–3811,[2] but that statute proscribes other offenses as well. Appellant was not convicted of false pretenses but of theft by deception, a different and more broadly defined offense.

Section 22–3811(b) provides:

A person commits the offense of theft if that person wrongfully obtains or uses the property of another with intent:

(1) To deprive the other of a right to the property or a benefit of the property; or

(2) To appropriate the property to his or her own use or to the use of a third person.

"The term 'wrongfully obtains or uses' means [among other things] ... obtaining property by trick, false pretense, false token, tampering, or deception." D.C.Code § 22–3811(a).

Thus, under the 1982 act, the use of any one of these methods—trick *or* false pretense *or* false token *or* tampering *or* deception—to obtain the property of another constitutes theft.[3]

The current standard jury instruction divides the offense of theft into three parts. CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.38 (4th ed.1993). Part A applies to the type of theft formerly known as larceny, both under the prior statute and at common law. Part B applies to thefts in the nature of embezzlement, larceny after trust, and similar crimes. The government's theory at trial was that appellant's conduct was a crime under Part C, which includes not only the offense formerly known as false pretenses but also thefts resulting from any kind of deception.[4]

Part C states in part that, as the statute provides, "wrongfully obtaining" the property of another consists of taking control of it by false pretense *or* deception. The instruction goes on to define these terms:

A "false pretense" is a false representation of a past or existing fact, which the defendant knows is false, and on which the owner relies in making [her] decision to give up [her] property to another. A false statement as to the future, by way of a promise or an opinion or an expectation, is not a false pretense. However, a false representation of a past or existing fact, combined with a false promise as to the future, may constitute a false pretense.

\*　　\*　　\*　　\*　　\*　　\*

"Deception" is any act or communication made by the defendant which [he] knows to be untrue or false, and on which the owner relies in making [her] decision to give up [her] property to another.

The comment to this instruction states in part:

---

**2.** Section 22–3811 defines the crime of theft. Section 22–3812 differentiates between first-degree and second-degree theft, according to the value of the property involved.

**3.** The statute also includes within the definition of theft other types of conduct which are not at issue here.

**4.** Even though this was not a jury trial, the court agreed that Part C of the instruction stated the applicable law.

The Committee [that drafted the instruction] retained from the common law the requirement that the defendant know the falsity of the representation or conduct....

The Committee retained the common law definition of false pretenses, restricting the misrepresentations to present or past fact. However, *a charge of theft may still lie where the misrepresentation is as to the future, because the term "deception" seems designed to be broad enough to cover such conduct.*

CRIMINAL JURY INSTRUCTIONS, *supra,* No. 4.38, Comment at 364 (emphasis added). We agree with the Comment, and accordingly hold that when a theft charge is based on deception, as this one is, the statutory term "deception" may include a misrepresentation as to the future, as well as a misrepresentation as to a past or existing fact. Our holding is consistent with an important purpose of the 1982 act, namely, "to promote more effective law enforcement by removing anachronisms and unnecessary technical statutory and common law distinctions which have hampered law enforcement...." COUNCIL OF THE DISTRICT OF COLUMBIA, REPORT ON BILL No. 4–133, at 1 (1982). *See also Driver v. United States,* 521 A.2d 254, 258 (D.C.1987); *Chaplin v. United States,* 81 U.S.App. D.C. 80, 83, 157 F.2d 697, 700 (1946) (Edgerton, J., dissenting) (criticizing as "an obvious fiction" the distinction which the Council has now rejected).

■ Our standard for considering any claim of evidentiary insufficiency is well settled. We must view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences, and recognizing the right of the trier of fact—in this instance, the trial court—to weigh the testimony of witnesses and to resolve issues of credibility. *United States v. Hubbard,* 429 A.2d 1334, 1337–1338 (D.C.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981); *Byrd v. United States,* 388 A.2d 1225, 1229 (D.C.1978). The government need not negate every possible hypothesis of innocence. *Chaconas v. United States,* 326 A.2d 792, 798 (D.C.1974); *see Owens v. United States,* 688 A.2d 399, 406–

408 (D.C.1996), (Schwelb, J., concurring). Nor do we draw any distinction between direct and circumstantial evidence. *Chambers v. United States,* 564 A.2d 26, 30–31 (D.C.1989). Applying these principles, we hold that the evidence was sufficient to support appellant's conviction.

■ To convict appellant of second-degree theft, the government had to prove (1) that he wrongfully obtained the property of Ms. King, (2) that at the time he obtained it, he specifically intended "either to deprive [her] of a right to the property or a benefit of the property or to take or make use of the property for [himself] ... without authority or right," and (3) that the property had some value. CRIMINAL JURY INSTRUCTIONS, *supra,* No. 4.38. There is no dispute in this case about the third element: appellant obtained more than $5,000 in cash from Ms. King. Appellant contends, however, that there was insufficient evidence that he wrongfully obtained the money and that he had the requisite specific intent.

Viewed in the light most favorable to the government, the evidence showed that he obtained Ms. King's money by deception, and therefore "wrongfully," by entering into a contract and accepting payment for home improvements which he did not intend to complete. Ms. King relied on this deception when she gave appellant her money. She believed that he was a licensed contractor (because he told her he was) and that he would complete the home improvements described in the contract. A reasonable trier of fact could find, from all the evidence, that Ms. King would not have given more than $5,000 to appellant had it not been for his deception.

■ Specific intent, unless admitted by the defendant, must usually be shown by circumstantial evidence. *See Bowman v. United States,* 652 A.2d 64, 67 (D.C.1994); *Massey v. United States,* 320 A.2d 296, 299 (D.C.1974). In this case the government had to prove that appellant specifically intended to deprive Ms. King of the right to her money—*i.e.,* that he intended to take and keep it for himself. The court could reasonably find such an intent based on Ms. King's testimony that appellant never performed

any of the home improvements enumerated in the contract and never returned the money. In addition, the court permissibly inferred appellant's intent from the fact that he added a handwritten notation on the contract stating that "starting and completion dates are subject to change." Ms. King had testified that this notation was not on the contract when she signed it, and the court credited her testimony, finding that the handwritten notation showed an intent to deprive Ms. King of her property "and to later cover up that fact and to excuse that fact." The court also found that appellant had to know that he could not verbally alter the contract by telling Ms. King that she must submit a written request for a refund (the contract as written contained no such requirement).

██ Appellant claims that the court erred in relying on events that occurred after he obtained the money because they do not establish his intent at the time he obtained it. We disagree. Evidence of a subsequent act, if connected in some material way with the event in question, can be probative of a prior state of mind. In *Bowman,* for example, the appellant argued that the evidence was insufficient to prove that he entered his ex-wife's home with intent to commit an assault, because it showed only that he assaulted someone after he was inside. We rejected this argument, holding that "the fact that appellant actually committed an assault very soon after he was inside the house is strong circumstantial evidence that he intended to commit an assault at the time he entered." *Bowman, supra,* 652 A.2d at 68 (citation omitted); *see also United States v. Gallo,* 177 U.S.App. D.C. 214, 218, 543 F.2d 361, 365 (1976). In this case, although appellant's true intent did not reveal itself until later, after he failed to do the work and failed even to return Ms. King's phone calls, the trial court could reasonably find from all the circumstances that he intended to deprive Ms. King of her money at the time he received it.

In summary, we observe that appellant was convicted not of false pretenses but of theft by deception, one of several varieties of theft proscribed by D.C.Code § 22–3811. We hold that the word "deception," as used in that statute, goes beyond the common law definition of false pretenses and includes any misrepresentation as to the future, as well as the past or present. Finally, we hold that the evidence was sufficient to prove that appellant obtained Ms. King's money by deception and that he specifically intended to deprive her of it and keep it for himself. Appellant's conviction is therefore

*Affirmed.*