*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-CF-274

MOUREEN MASIKA, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CF2-16046-18)

(Hon. Robert Okun, Trial Judge)

(Submitted September 22, 2021                    Decided December 2, 2021)

*Donald L Dworsky* was on the brief for appellant.

*Channing D. Phillips*, Acting United States Attorney at the time the brief was filed, *Elizabeth Trosman*, *John P. Mannarino*, *Elizabeth Kelley*, *Jennifer Mika*, and *Ethan L. Carroll*, Assistant United States Attorneys, were on the brief for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, THOMPSON,[*] *Associate Judge*, and NEBEKER, *Senior Judge*.

---

[*] Judge Thompson was an Associate Judge of the court at the time of submission. Although her term expired on September 4, 2021, she will continue to serve as an Associate Judge until her successor is confirmed. *See* D.C. Code § 11-1502 (2012 Repl.). She was qualified and appointed on October 4, 2021, to

(continued…)

NEBEKER, *Senior Judge*:    Appellant, Moureen Masika, appeals her conviction for financial exploitation of a vulnerable adult or elderly person ("FEVA") by fraud.  She challenges the sufficiency of evidence to support fraud and the jury instructions regarding the fraud offense.  We affirm.

## I.  Background

In 2012, Hugh Jacobsen suffered a stroke and his physical health and cognitive functions began to decline.  Mr. Jacobsen's son, Simon Jacobsen, hired two home health aides through Georgetown Home Care to assist with his father's care, including his bathing, dressing, and cooking.  In 2018, appellant and Margarette Butler were the two home health aides that cared for Hugh Jacobsen.

---

(…continued)

perform judicial duties as a Senior Judge and will begin her service as a Senior Judge on a date to be determined after her successor is appointed and qualifies.

Due to his condition, Hugh Jacobsen was unable to manage his finances. Simon Jacobsen and his wife directly provided for most of his father's needs. They ordered groceries to be delivered to Hugh Jacobsen's house through Instacart. If the aides wanted to order carryout food for Hugh Jacobsen, Simon Jacobsen would place the order himself. His clothes and medications were also provided for.

If the aides needed to purchase an item for Hugh Jacobsen, they could use a debit card connected to his BB&T Bank checking account that was kept in a kitchen cabinet. The card was meant for "small incidental things from time to time," such as butter, detergent, and toothpaste, as the aides were not supposed to leave Hugh Jacobsen alone in the house. Simon Jacobsen instructed the aides that they needed his permission to use the card, and after making a purchase they were to put receipts in a jar in the kitchen. He never gave them permission to get cash using the debit card.

Jonathan Altheimer—an attorney who worked for the family architecture firm—was responsible for helping Simon Jacobsen manage Hugh Jacobsen's bills and monitor his bank statements. In May 2018, he noticed charges on the debit card statement from CVS Pharmacy that were in larger amounts and more frequent

than usual, with back-to-back transactions on many dates. The CVS transactions from January 1, 2018, through approximately April 13, 2018, totaled over $3,400. Mr. Altheimer obtained two receipts from CVS and discovered that each included a small amount of goods as well as $40 in cash back. He brought this irregular card activity to Simon Jacobsen's attention.

Simon Jacobsen confronted both of the home health aides about the charges towards the end of May 2018. He compared the dates of the transactions to the aides' work schedules and learned that appellant was working on the days the charges were made. When he asked appellant to explain the charges, she said something to the effect of, "Oh, Simon, this is something we all have to do." She also asked him to throw away the receipts.

He again confronted her about the charges on October 4 in a text message that read, "You owe us $7,000 in stolen credit card cash back charges from CVS." Appellant responded, "Simon, I don't owe you any money. Any money I used on that card was for your father. I gave that job nothing but my best. It's not an easy job. I used my money many times, even have receipts. I don't buy personal things from CVS."

The police investigation identified and obtained eighty-five receipts from CVS. The items purchased included a home paternity test, makeup, a hair wrap, and feminine pads. Ms. Butler identified appellant on CVS security camera footage on several of the dates in question, including at the self-checkout register on at least three occasions.

Appellant was charged with FEVA by fraud and three counts of second-degree theft. The case proceeded to a jury trial. After all of the evidence had been introduced, the trial court discussed the jury instructions with counsel for both parties. Regarding the instructions for fraud as it relates to the FEVA charge, the trial court discussed the paragraph from the standard instructions explaining "false representation," asking whether it fit the facts of the case and "what statement or assertion from the evidence" it would refer to. The government suggested removing the paragraph, to which counsel for appellant stated, "I agree with the Government." The trial court stated it would delete the entire paragraph about false representations, as well as the following paragraph defining "material fact,"

which related back to the definition of false representation.[1]   Both parties stated that they did not object.[2]

---

[1] The omitted instructions provide:

> A false representation or promise is any statement that concerns a material or important fact or a material or important aspect of the matter in question. The term includes an actual, direct false statement, a half-truth, and a knowing concealment of a fact that is material or important to the matter in question. [Name of defendant] must have known that the statement or assertion was untrue when he/she made or used it, or have made or used it with reckless indifference as whether it was, in fact, true or false …

> A material fact is a fact that would be important to a reasonable person in making a decision about a particular matter.

Criminal Jury Instructions for the District of Columbia, No. 5.200 (5th ed. 2021).

[2] On fraud, the judge instructed the jury:

> Fraud means a scheme or systemic course of conduct with intent to defraud or to obtain property of another by means of a false or fraudulent pretense, representation, or promise and thereby obtain property of another or cause another to lose property. A scheme is any pattern of behavior calculated to deceive persons of ordinary prudence and comprehension.

> A systematic course of conduct is a pattern of activity. It need not exist over an extended period of time. But there must be more than an isolated act.

<span style="text-align:right">(continued…)</span>

The jury convicted appellant on all counts. Judge Robert Okun sentenced her to 180 days of incarceration on each count, all suspended, with three years of probation with the condition that she not work as a home health aide, and ordered her to pay $1,800 in restitution.

## II. Analysis

Appellant does not challenge her theft convictions. She raises two issues on appeal regarding the FEVA by fraud conviction. First, she challenges the sufficiency of evidence of the underlying offense of fraud. Specifically, she argues

_____

(…continued)

> It is not necessary for the Government to prove that Moureen Masika intended to deceive or cheat a particular person. It is sufficient if you determine that she had an intent to deceive or cheat any person in order to obtain property from the elderly person.

> To show that the property was lost or obtained as a result of the scheme or systemic course of conduct, the Government must prove that but for Moureen Masika's scheme or systemic course of conduct, the property would not have been lost or obtained.

there was insufficient evidence to show she made a "false or fraudulent pretense, representation, or promise." She also contends that the jury instruction on FEVA constituted plain error because it did not include the definitions of "false representation or promise" and "material fact" to accompany the instruction on fraud.

## A. Sufficiency of the evidence

In reviewing the sufficiency of the evidence, "we view the evidence in the light most favorable to the government, giving full play to the right of the fact-finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Cherry v. District of Columbia*, 164 A.3d 922, 929 (D.C. 2017) (internal quotations omitted). "The evidence is sufficient if any rational fact-finder could have found the elements of the crime beyond a reasonable doubt." *Hernandez v. United States*, 129 A.3d 914, 918 (D.C. 2016).[3]

---

[3] Appellant separately argues that the trial court erred in denying her motions for judgments of acquittal and that there was insufficient evidence to convict, for the same reason as the first issue she raises. Because we apply the same standard in reviewing the denial of a motion for judgment of acquittal based

(continued…)

D.C. Code § 22-933.01(a)(3) (2021 Supp.) provides that:

> a person is guilty of financial exploitation of a vulnerable adult or elderly person if the person intentionally and knowingly … [v]iolates any provision of law proscribing theft, extortion, forgery, fraud, or identity theft against the vulnerable adult or elderly person, so long as the offense was undertaken to obtain the property, including money, of a vulnerable adult or elderly person.

First-degree fraud requires proof that a person "engage[d] in a scheme or systematic course of conduct with intent to defraud or to obtain property of another by means of a false or fraudulent pretense, representation, or promise and thereby obtain[ed] property of another or cause[d] another to lose property." D.C. Code § 22-3221(a) (2012 Repl.); *Cooper v. United States*, 28 A.3d 1132, 1135 (D.C. 2011).

Appellant does not challenge the sufficiency of the evidence that she engaged in a scheme and systematic course of conduct, had the requisite intent, or obtained the property of another. Her only challenge to the sufficiency of the

_____

(…continued)
on the sufficiency of evidence, *see Nixon v. United States*, 730 A.2d 145, 148 (D.C. 1999), asking whether there was sufficient evidence for a reasonable jury to find guilt beyond a reasonable doubt, we consider these three claims as one.

evidence is that the government failed to prove that she made "a false or fraudulent pretense, representation, or promise." Her argument seems to rest on the assumption that a statement is required to prove fraud.

Appellant relies in part on the common law definition of fraud, which requires a "false representation," to support this interpretation. *See Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977). However, under the common law, we have recognized that "[n]ondisclosure or silence, as well as active misrepresentation, may constitute fraud." *Id.*; *see also Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 908 (D.C. 2017) ("[F]raud may be committed by the omission of material facts…."); *In re Outlaw*, 917 A.2d 684, 688 (D.C. 2007) ("Concealment or suppression of a material fact is as fraudulent as a positive direct misrepresentation.") (quoting *In re Mitchell*, 727 A.2d 308, 315 (D.C.1999)).

Federal courts interpreting the mail fraud statute[4]—which served as a model for the District's fraud statute and the source of the statutory language appellant

---

[4] The federal mail fraud statute provides, in relevant part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or *for obtaining money or property by means of false or fraudulent pretenses, representations, or promises* . . . shall be fined under this title or imprisoned not

(continued…)

points to—have similarly made clear that fraud does not necessarily require a statement. *See* The District of Columbia Theft and White Collar Crimes Act of 1982, Extended Comments on Bill No. 4-133 before the Committee on Judiciary, 4th Council Period, at 40, 41 (July 20, 1982); *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003) (rejecting argument that the government "needed to prove a specific false statement" for mail fraud because "a defendant's activities can be a scheme or artifice to defraud whether or not any specific misrepresentations are involved") (internal brackets omitted); *United States v. Colton*, 231 F.3d 890, 898 (4th Cir. 2000) (applying common law meaning of "to defraud" in bank fraud statute to "include[] acts taken to conceal, create a false impression, mislead, or

---

(…continued)

more than 20 years, or both." 18 U.S.C. § 1341 (emphasis added). Congress amended the statute in 1909 to add the language "or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." *See McNally v. United States*, 483 U.S. 350, 357 (1987). "The words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" *Id.* at 358. The addition of the phrase "or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" "does not indicate that Congress was departing from this common understanding" but rather "simply made it unmistakable that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property." *Id.* at 358-59.

otherwise deceive in order to "prevent the other party from acquiring material information") (internal brackets omitted).

Appellant also emphasizes the distinction between fraud and theft, codified at D.C. Code § 22-3211 (2021 Supp.) to encompass several previously distinct offenses including larceny by trick, larceny by trust, and false pretenses. Before fraud was established as a separate offense, frauds were prosecuted under these theft-related offenses. The District of Columbia Theft and White Collar Crimes Act of 1982, Report on Bill No. 4-133 before the Committee on Judiciary, 4th Council Period, at 14 (June 1, 1982). "The gravamen of [the offense of fraud], which distinguishes it from theft, is engaging in a scheme or systematic course of conduct to defraud or obtain property of another." *Id.* Because the "scheme or systematic course of conduct" element is not in dispute here, the distinction between theft and fraud does not help appellant. *See Warner v. United States*, 124 A.3d 79, 86 (D.C. 2015) (holding "attempted second-degree theft by means of deception is a lesser included offense of second-degree fraud" because the "pattern of multiple acts" required for fraud "encompasses the single overt act" required for attempted second-degree theft and "the 'intent to defraud or to obtain property of another by means of a false or fraudulent pretense, representation, or promise' that constitutes the *mens rea* element of fraud encompasses the intent to obtain

another's property by 'deception' and without right that is the corresponding element of theft").

Indeed, *Blackledge v. United States*, in which we affirmed a conviction of attempted false pretenses, is illustrative here. 447 A.2d 46 (D.C. 1982). One of the elements of false pretenses was "defendant *made a false representation* with knowledge of its falsity and an intent to defraud."[5] *Id.* at 49 (emphasis added). We concluded that by presenting a stolen credit card to purchase gasoline, "[a]ppellant made an implicit representation that he would render lawful payment," which satisfied the false representation element. *Id*. at 51. *Blackledge* demonstrates that a false representation can be made through conduct without making a specific statement. *C.f. Warner*, 124 A.3d at 88 ("A false promise need not be express to support a conviction of attempted theft by deception; it can be implicit.").

---

[5] The statute proscribing false pretenses, formerly D.C. Code § 22-1301, has since been repealed and replaced by the more general theft statute. *See Cash v. United States*, 700 A.2d 1208, 1210 (D.C. 1997); The District of Columbia Theft and White Collar Crimes Act of 1982, Report before the Committee on Judiciary, at 11.

In *Blackledge*, we also found the evidence was sufficient for the "jury to infer appellant's guilty knowledge that the card was stolen, as well as his fraudulent intent to use the card" where—even though he claimed he thought he was authorized to use the card because his friend gave it to him and it belonged to her uncle—he did not know the cardholder and "made no arrangements to repay him." 447 A.2d at 50; *see also United States v. Avant*, 275 F.2d 650, 653 (D.C. Cir. 1960) ("[T]he jury is permitted to impute knowledge of the falsity of the statements of the accused … as a consequence of inferences reasonably drawn from the facts shown.").

We hold that the evidence was sufficient for a reasonable jury to find appellant made a false or fraudulent pretense, representation, or promise to support the conviction of FEVA by fraud.[6]  The evidence showed that appellant used the debit card when she did not have permission to do so and, moreover, exceeded the scope of any authorized use by getting cash back at checkout and purchasing items for her own personal use.  Based on the clear limitations on the home health aides'

---

[6]  The government also contends there is sufficient evidence to establish appellant violated D.C. Code § 22-3223 (2021 Supp.), the statute proscribing credit card fraud.  Because we find the evidence sufficient to support the elements of first degree fraud under D.C. Code § 22-3221(a), we need not reach this argument.

use of the card, which both Simon Jacobsen and Margarette Butler testified to, the jury could infer that appellant knew she was not authorized to use the card for these transactions. Like in *Blackledge*, by presenting the debit card for purchases at CVS, Ms. Masika made an implied representation that she was authorized to use it. She further concealed the truth from the Jacobsens by failing to put the receipts in the jar to account for her purchases, the established procedure for when the home health aides used the debit card. Thus, her conduct was sufficient to establish fraud even without a specific statement. The key facts distinguishing appellant's FEVA by fraud conviction from the theft convictions is that FEVA by fraud covered the span of CVS transactions over several months, whereas each count of second-degree theft applied to a specific transaction.

## B. Jury instructions

Appellant argues that the trial court erred by failing to include the definitions of "false representation or promise" and "material fact" in its jury instructions on the elements of fraud. Relying on our decision in *Butts v. United States*, the government contends that appellant waived this argument by agreeing to the omission of the specific definitional jury instructions. 822 A.2d 407 (D.C. 2003). In *Butts*, we noted that, because "a defendant may not take one position at trial and

a contradictory position on appeal," we were precluded from considering a claim of instructional error where "defense counsel not only failed to object, but actually agreed with the prosecutor during the conference on [the] instructions" being challenged. *Id.* at 416; *see also Plummer v. United States*, 43 A.3d 260, 267, 270 (D.C. 2012) (holding appellant waived claim that trial judge was disqualified where he had knowledge of the grounds for disqualification and "expressly declared that he did not object to the judge presiding over the trial").

Similarly, in this case the trial court specifically discussed the omission that appellant now claims constituted error with both parties before instructing the jury. Counsel for appellant did not merely fail to object to the instruction, but rather affirmatively agreed to the deletion of the paragraph defining "false representation" and expressly stated no objection to deletion of the paragraph defining "material fact." Therefore, we hold that appellant waived this claim of instructional error.[7]

---

[7] In any event, the instruction as given is not plain error, preserved or not. "Under the test for plain error, an appellant must show (1) error, (2) that is plain, and (3) that affected [her] substantial rights," which will nevertheless not warrant reversal "unless (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Fortune v. United States*, 59 A.3d 949, 954 (D.C. 2013) (internal quotations omitted). When reviewing a claim of instructional

(continued…)

## III.   Conclusion

For the foregoing reasons, we affirm appellant's conviction.

*So ordered*.

---

(…continued)

error, we "examine the instructions in their entirety," *Buskey v. United States*, 148 A.3d 1193, 1205 (D.C. 2016) (quoting *Jackson v. United States*, 653 A.2d 843, 847 (D.C. 1995)) and have recognized that a trial court is not obligated to "defin[e] a term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances." *Griffin v. United States*, 850 A.2d 313, 318 (D.C. 2004) (quoting *Wilson v. United States*, 785 A.2d 321, 328 (D.C. 2001)). Here, the jury instructions contained every element of first-degree fraud to support the FEVA offense. The trial court's decision not to include the definitions of "false representation or promise" and "material fact," which largely focus on an express statement, was reasonable under the facts of the case and in line with the law of fraud which, as discussed above, does not necessarily require an express statement. Therefore, we are satisfied that the jury instruction did not constitute error.