Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 7, 2003      Decided November 10, 2003

No. 01-3109

UNITED STATES OF AMERICA,
APPELLEE

v.

JEROME WENDELL MAPLE, *A/K/A* WILLIAM LEE JOHNSON,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 00cr00364–01)

On Appellant's Petition for Rehearing En Banc

Before: SENTELLE and ROGERS, *Circuit Judges,* and SILBERMAN, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: This case comes before the court on Jerome Maple's petition for rehearing and rehearing en banc ("Petition") of the court's rejection of his Fourth Amendment challenges to his convictions of possessing co-

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

caine base in excess of five grams, *see* 21 U.S.C. § 844(a), and carrying a pistol without a license, *see* D.C. CODE ANN. § 22–3204(a) (1981) (now codified at D.C. CODE ANN. § 22–4504(a) (2001)). *See United States v. Maple*, 334 F.3d 15 (D.C. Cir. 2003); *but see id.* at 21-26 (Rogers, J., dissenting in part). We grant rehearing and we vacate Part II of our opinion. *See id.* at 17-20. As the United States now acknowledges in its response to the Petition ("Response"), "the officer's conduct in this case was a search within the meaning of the Fourth Amendment." Response at 2. We hold that the district court erred in denying Maple's motion to suppress a silver pistol seized by a Metropolitan Police Department ("MPD") officer from the closed compartment in the console of Maple's car. The warrantless search of the car console was without Maple's consent, lacked probable cause, and was not in accordance with the MPD's established procedures for securing a defendant's property. Accordingly, because Maple did not preserve his Second Amendment claim, *see Maple*, 334 F.3d at 21, and because the drugs were in plain view on top of the console, *see id.* at 17, we reverse the judgment of conviction and remand the case for the retrial that Maple seeks, Appellant's Br. at 22, on the drug charge.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. These protected "effects" include automobiles, *Preston v. United States*, 376 U.S. 364, 366-67 (1964), and although a person " 'has a lesser expectation of privacy in a motor vehicle because . . . [i]t travels public thoroughfares where both its occupants and its contents are in plain view,' " *New York v. Class*, 475 U.S. 106, 112-13 (1986) (quoting *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974) (plurality opinion)), "a car's interior . . . is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police," *Class*, 475 U.S. at 114-15. The government's "intrusion into a particular area, whether in an automobile or elsewhere," violates the Fourth Amendment if "the area is one in which there is a 'constitutionally protected reasonable expectation of privacy.' " *Id.* at 112 (citing *Katz v. United*

*States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). Because the government failed to offer evidence that Maple, upon his arrest for traffic violations, had waived a reasonable expectation of privacy in the closed console of his car, which had not been impounded by the police, the warrantless search of that compartment was impermissible under the Fourth Amendment.

It is long settled that " '[a] search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.' " *Soldal v. Cook County*, 506 U.S. 56, 63 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (internal quotations omitted)). Or stated conversely, "a Fourth Amendment search does *not* occur ... unless 'the individual manifested a subjective expectation of privacy in the object of the challenged search,' and 'society [is] willing to recognize that expectation as reasonable.' " *Kyllo v. United States*, 533 U.S. 27, 33 (2001) (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)). In *Kyllo*, after explaining that the scope of a search is defined by privacy expectations, the Supreme Court held that information obtained through thermal imaging of a private home "was the product of a search," *id.* at 35, rejecting the view that information was not obtained regarding the interior of the home, *id.* at 35 n.2. *Kyllo* thus reenforces the importance of privacy expectations in Fourth Amendment analysis even when a search occurs other than by sight. As such, it hardly exempts, as here, an "inadvertent" discovery in the course of caretaking from the Fourth Amendment's protections. The United States concedes that any deliberate governmental intrusion into a closed space — opening a door or a closed compartment — is a search regardless of the reasons for the intrusion. *Cf. Horton v. California*, 496 U.S. 128, 141 (1990).

A closed, opaque compartment by its nature secures its contents from public view — as the officer indicated was his intention with respect to Maple's cell phone — and when Maple was arrested, the console in his car was closed. The government, which has the burden of proving the lawfulness of the search, *Mincey v. Arizona*, 437 U.S. 385, 390-91 (1978), offered no evidence that Maple did not have a privacy interest

in the contents of the console or had waived that interest, and the district court made no finding that the closed console was not a repository of Maple's personal effects or that Maple had no expectation of privacy, much less that the officer had probable cause to open it. *See Class*, 475 U.S. at 118–19; *Cardwell*, 417 U.S. at 591; *cf. California v. Acevedo*, 500 U.S. 565, 579 (1991)*; United States v. Ross*, 456 U.S. 798, 800, 825 (1982).

Although the United States relied during oral argument on *Harris v. United States*, 390 U.S. 234 (1968) (per curiam), to argue that no search occurred, it now acknowledges that *Harris*' "limited holding [does not] support[ ] the conclusion that there was no search at all in this case," Response at 10. As it concedes, *id.* at 9-10, *Harris* involved an inventory search of an impounded car that did not present the question of the legality of the search pursuant to police regulations, *Harris*, 390 U.S. at 235-36. Moreover, the officer in *Harris* discovered the robbery victim's car registration while taking measures "to protect the [defendant's] car while it was in police custody," in accordance with MPD regulations. *Id.* Maple's car, by contrast, had not been impounded, and the officer was not acting pursuant to standardized departmental procedures in opening the console. Further, the registration card in *Harris* "was plainly visible," and "[i]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Id.* at 236 (citations omitted). But Maple's gun, unlike his cell phone, was not in plain view; it was located in a closed compartment and was discovered only after the officer opened the compartment without Maple's authorization. Thus, acting pursuant to established police procedures, as the police did in *Harris, id.*, goes to the reasonableness of the officer's conduct not to whether or not there was a search.

"In determining whether a . . . search is reasonable under the Fourth Amendment, courts look to objective evidence, not subjective intentions." *United States v. Magnum*, 100 F.3d 164, 170 (D.C. Cir. 1996) (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996)). In other words, "the issue is not"

the law enforcement officer's "state of mind" — whether he was intentionally rummaging about for contraband or wished to find something in particular — "but the objective effect of his actions" — whether a reasonable expectation of privacy was infringed. *Bond v. United States*, 529 U.S. 334, 338 n.2 (2000). For instance, in holding in *Class* that the search of the inside of a car (to remove papers on the dashboard obscuring the vehicle identification number that would otherwise be in plain view) was "sufficiently unintrusive to be constitutionally permissible," *Class*, 475 U.S. at 119, the Supreme Court found significant that the officer "did not reach into any compartments or open any containers," *id.* at 118. That finding contrasts sharply with the officer's opening of the closed console in Maple's car, which upset Maple's reasonable expectation of privacy, regardless of the officer's purpose.

Under the Supreme Court's precedents, then, the officer's opening of the closed compartment in Maple's car constituted a search, and a warrantless search of private property is per se unreasonable unless it falls within one of the " 'few specifically established and well-delineated exceptions' " to the warrant requirement. *Mincey*, 437 U.S. at 390 (quoting *Katz*, 389 U.S. at 357). In determining whether the officer's search of the closed console was lawful under the Fourth Amendment, the Supreme Court's decision in *Cady v. Dombrowski*, 413 U.S. 433 (1973), is instructive. In *Cady*, the Supreme Court held that a warrantless search of the trunk of a car was not unreasonable under the Fourth and Fourteenth Amendments because the police had reason to believe that the trunk contained a gun, the car was vulnerable to intrusion by vandals, and public safety could have been endangered had an intruder removed a gun from the trunk of the vehicle. *Id.* at 447-48. The court observed that "local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what . . . may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* at 441. The Supreme Court in *Cady* emphasized, however, that the

police had (1) exercised a form of control over the car, and (2) acted under "standard procedure in (that police) department." *Id.* at 442-43. In other words, because the police had taken temporary custody of the car, the search was not merely the subjective choice of the officer conducting the search. *See also Harris*, 390 U.S. at 235.

Here, the police officer exercised a form of control over Maple's car, but the district court made no finding that the officer acted pursuant to established MPD procedures when he opened the console to secure the cell phone and, thereby, the car. The officer testified that he routinely relocates cars to legal parking spaces following traffic arrests, but he did not claim that MPD officers routinely open closed compartments in private automobiles to secure a defendant's personal property. Nor did the government, which has the burden, *Mincey*, 437 U.S. at 390-91, introduce such evidence.

Absent personal property found inside a car that might pose a danger to the officer or to the public, thus affording probable cause for the officer to secure the weapon and prevent it from falling into the wrong hands, *see Cady*, 413 U.S. at 447-48, *Cady* required the officer to act in accordance with the MPD's established procedures for protecting personal property in a car that is in temporary police custody, *see id.* at 445-46. Doing so ensures that any police intrusion into private property is limited in scope to the extent necessary to carry out the caretaking function, *South Dakota v. Opperman*, 428 U.S. 364, 374-75 (1976), thereby preventing warrantless searches, such as inventories, *id.* at 367-76, from becoming "a ruse for a general rummaging in order to discover incriminating evidence," *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Whether or not the officer's search of the console inside of Maple's unimpounded car in order to secure a cell phone violated MPD's policy and procedures governing *Automobile Searches and Inventories*, it clearly was not expressly authorized. *See generally* MPD Gen. Order 602(I) (May 26, 1972), *reprinted in* Joint Appendix at 37-52. MPD policy limits warrantless searches to particular circumstances. If, for

example, a prisoner's car is not taken to a location at or near a police facility, "it shall not be inventoried in any way," *id.* at 602(I)(B)(3)(b), an "inventory" being defined as "an administrative process by which items of property are listed and *secured*," *id.* at 602(I)(B) (emphasis added). Further, such car shall not be searched unless: (1) the arresting officer does so in the presence of the defendant at the time of his arrest, in which case the officer may search "only those areas within the immediate control of the defendant (the area from which the arrested person might gain possession of weapons or destructible evidence)," *id.* at 602(I)(A)(1)(a)(1); or (2) a police officer has probable cause to believe that the car contains the fruits, instrumentalities, contraband, or evidence of the crime for which the defendant was arrested — exceptions not relevant in this case. *Id.* at 602(I)(A)(1)(a)(1) & (b)(1). Neither of the above circumstances apply: the search did not occur in Maple's presence at the time of his arrest, MPD Gen. Order 602(I)(A)(1)(a)(1), and the officer did not testify, nor did the district court find, that the search was conducted with probable cause associated with the crime for which Maple was arrested, *id.* at 602(I)(A)(1)(b)(1).

Even if Maple's car had been taken to a location at or near a police facility, MPD policy only authorizes the officer to remove "personal property which can easily be seen from outside the vehicle and which reasonably has a value in excess of $25," to take the property to the police facility, and to enter it on a property log for later return to the defendant. *Id.* at 602(I)(B)(3)(b). Instead, the officer decided to open a closed compartment in Maple's car. Nothing since *Cady* suggests that the Supreme Court has abandoned its emphasis on the need for the police to act pursuant to "standardized criteria" or "established routine" when opening containers. *See Wells*, 495 U.S. at 4-5; *cf. Colorado v. Bertine,* 479 U.S. 367, 375-76 (1987); *Illinois v. Lafayette,* 462 U.S. 640, 648 (1983); *Opperman*, 428 U.S. at 375-76.

Because the officer's opening of the console does not fall within one of the "few specifically established and well-delineated exceptions" to the warrant requirement, *Mincey*, 437 U.S. at 390, the reasonableness of the officer's conduct is

to be determined by reference to whether he followed the MPD's procedures. *See Wells*, 495 U.S. at 3-4; *Opperman*, 428 U.S. at 376; *United States v. Duguay*, 93 F.3d 346, 351-52 (7th Cir. 1996); *United States v. Marshall*, 986 F.2d 1171, 1174-76 (8th Cir. 1993); *United States v. Johnson*, 936 F.2d 1082, 1084 (9th Cir. 1991). Otherwise, there is no limit to the officer's discretion or to the scope of the intrusion into private property under the guise of securing the defendant's belongings. *See Wells*, 495 U.S. at 4; *Opperman*, 428 U.S. at 375; *Marshall*, 986 F.2d at 1174. Here, MPD General Order 602 established, and thus restricted, the manner in which a police officer can protect a defendant's property. Moreover, the record fails to show inadvertent conduct under the plain view doctrine; the officer spotted the gun only after he opened the closed console. Even assuming that the privacy interest in an unlocked, closed compartment is of a lesser order than the privacy interest in a locked glove compartment or, as in *Wells*, 495 U.S. at 2, in a locked trunk, the salient point is that whatever his good intentions, the officer failed to follow established police policy and procedures for securing a defendant's property.

In sum, "there is a well settled definition of 'search' in the Fourth Amendment context, and that definition does not require that the police be 'looking for something,' but rather focuses on whether the actions of 'the government violate[ ] a subjective expectation of privacy that society recognizes as reasonable'." Response at 4-5 (citations omitted). "[I]t also is well settled that police conduct can amount to a search even if the conduct was not motivated by a desire to look for evidence of crime." *Id.* at 5. Otherwise, contrary to Supreme Court precedent, "warrantless and suspicionless intrusions into closed containers, automobiles, and even homes are not searches so long as the police do not intend to look for something inside." *Id.* at 7; *see id.* at 8. Accordingly, because the district court erred in denying Maple's motion to suppress the evidence found inside the closed console in his car, we grant rehearing and we reverse the judgment of conviction. Because Maple did not preserve his Second Amendment claim, and because the drugs were in plain view

on top of the console, *see Harris*, 390 U.S. at 236, we remand the case for the retrial on the drug charge.