Antonio CANNON, Appellant,

v.

UNITED STATES, Appellee.

No. 00–CF–811.

District of Columbia Court of Appeals.

Submitted April 23, 2003.

Decided Dec. 18, 2003.

As Amended on Denial of Rehearing
March 2, 2004.

Antonio Cannon filed a brief pro se.

Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman, Ronald C. Machen, and Tracy N. Ferguson, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY and REID, Associate Judges, and FERREN, Senior Judge.

TERRY, Associate Judge:

Appellant was charged in an indictment with three counts of second-degree theft and one count of receiving stolen property. After a non-jury trial, he was found guilty of one count of second-degree theft, but acquitted of receiving stolen property.[1] Appellant was sentenced to 180 days in jail and fined $1000, and was ordered in addition to perform 500 hours of community service. Execution of the jail sentence was suspended, and appellant was placed on probation for one year. On appeal he makes three arguments: (1) that there was insufficient evidence to convict him of second-degree theft, (2) that the trial court improperly precluded him from presenting surrebuttal testimony to impeach a government rebuttal witness whose testimony had been stricken from the record, and (3) that the court rendered inconsistent verdicts when it found him guilty of second-degree theft while at the same time acquitting him of receiving stolen property. We affirm.

## I

At the time of the events giving rise to this case, appellant was a Metropolitan Police officer. At about 1:00 a.m. on September 19, 1999, he stopped John Cecchi on Greenwich Parkway, N.W., and arrested him for reckless driving. Mr. Cecchi's housemates, Charles Drew and Michael Kelly, were passengers in Cecchi's car.

---

1. The first theft count was for theft of a cellular phone, while the other two counts were based on appellant's use of the phone. Only the first theft count went to trial, along with the count that charged receiving stolen property; the other two counts were dismissed before trial.

Appellant parked the car himself, rather than having it towed and impounded, since Mr. Cecchi lived just a short distance away on Greenwich Parkway.[2] Appellant then took the keys out of the ignition, and from the center console he removed Mr. Cecchi's wallet, driver's license, registration, and his Nokia cellular phone, which was valued at $179.

Appellant took Mr. Cecchi to the Second District police station to process him for reckless driving, but he did not log the items he had taken from Mr. Cecchi's car into the police property book. While at the station, Mr. Cecchi filled out paperwork, providing his name, address, and telephone number. At about 3:00 a.m., appellant released Mr. Cecchi with a citation and returned his property to him, except for the cellular phone. Mr. Cecchi went home and went directly to bed.

Mr. Cecchi awoke around 11:00 a.m. and went outside to check on his car. At that time he discovered that his cellular phone was missing from the center console where he had left it. He immediately called the Second District police station, but was told he would be unable to speak to appellant until 10:00 p.m. when he came on duty. When Mr. Cecchi called back later that evening, appellant told him that he did not have the cellular phone and that it was not in the patrol car. Suspecting that appellant had stolen the phone, Mr. Cecchi declined appellant's offer to take a stolen property report.

Mr. Cecchi did not cancel his cellular phone service, hoping that someone would find the phone and call him. When he received his next bill, however, he noticed that seven calls had been made during the time the phone had been out of his possession. The bill showed that three of these calls, made soon after Mr. Cecchi was released from the station, were to the telephone number of Suzanne Boccia, who later was identified as appellant's former girl friend. The first call was made on September 19 at 5:34 a.m. (while Mr. Cecchi was still asleep), the second call on September 20 at 11:54 a.m., and the third on September 20 at 12:23 p.m. Between the second and third calls to Ms. Boccia, a call was also made on Mr. Cecchi's cell phone to Kay Jewelers.

Charles Newsome was a sales representative at the Sprint PCS store in Laurel, Maryland. His job was to "sell cellular phones to customers and set up their accounts." Mr. Newsome testified that on October 4, 1999, appellant attempted to trade in a Nokia cellular phone for a rebate on a new phone. After checking the phone's serial number in the store's computer, Mr. Newsome informed appellant that it had been reported stolen. Appellant replied that he had found it while working as a bouncer in a night club. Pursuant to store policy, Mr. Newsome confiscated the phone. Appellant then said that he still wanted to proceed with the sale and filled out a credit application. Because of his poor credit, appellant was required to put down a deposit plus the cost of a phone before service could be activated. Appellant replied that he did not have enough money with him to leave a deposit, but that he would return at a later time. He never returned. Meanwhile, after appellant left, Mr. Newsome called Mr. Cecchi to tell him that his phone had been found. They arranged for Mr. Newsome to send the phone to another Sprint store in Reston, Virginia, near Mr.

**2.** Appellant parked the car only "six car lengths" from the house where Mr. Cecchi lived. He did not allow either of Mr. Cecchi's passengers to park the car, since they both appeared to have been drinking.

Cecchi's place of employment, where he could more conveniently pick it up.

Lieutenant Michael Farish, with whom Mr. Cecchi had lodged the complaint that his phone had been stolen, met with Mr. Newsome on October 9 to show him an array of nine photographs, one of which was a picture of appellant. Mr. Newsome identified appellant from that photograph as the man who attempted to trade in the phone that was reported stolen. Lieutenant Farish obtained a warrant and placed appellant under arrest on October 13. In the course of processing him after the arrest, Lieutenant Farish found in appellant's wallet a business card from Mr. Newsome.

At trial appellant denied stealing the phone. He testified that at 10:45 p.m. on September 19—almost twenty-four hours after he had stopped Mr. Cecchi for reckless driving—he found the cellular phone behind the driver's seat of his police car. He then placed it in his locker instead of logging it into the property book, explaining that his initial failure to log in Mr. Cecchi's property violated police procedures and he did not want to subject himself to disciplinary action. However, between the time Mr. Cecchi was arrested and the time appellant said he found the phone, three other officers had driven the same police car. All three testified that they conducted the required search of the car for contraband and property before their respective shifts, and none of them found a cellular phone in the car. Appellant also stated that he called Mr. Cecchi's parents' house to inform Mr. Cecchi that he had found the phone, but did not leave a message because Mr. Cecchi was "adamant" about not letting his family find out about the arrest. Finally, appellant said that he visited Mr. Cecchi's house on Greenwich Parkway twice, and that he left his business card inside the door with a note to call him. However, according to Mr. Cecchi's housemates, no cards or notes from appellant were ever found.

## II

■ "To convict appellant of second degree theft under D.C.Code § 22–3811(b), the government must prove that (1) he wrongfully obtained the property of [another], (2) that at the time he obtained it, he specifically intended 'either to deprive [the owner] of a right to the property or a benefit of the property or to take or make use of the property for [himself] ... without authority or right,' and (3) that the property had some value." *Nowlin v. United States*, 782 A.2d 288, 291 (D.C. 2001) (citation and footnote omitted). The trial court found that the government had proved beyond a reasonable doubt that appellant "took the phone from a closed console ... with the intention of having a portable phone for his own use." Further, it found that "the endeavor to negotiate the phone at the Sprint store proves the intention to have the phone all along," and that appellant's aborted attempt to purchase a new phone was a "charade." In so finding, the court relied to a great extent on the testimony of Mr. Newsome, whom it found to be credible and who remembered the incident with "bell-like clarity." The court also discredited appellant's testimony that he could not contact Mr. Cecchi to return his phone.

■ In considering a claim of evidentiary insufficiency, this court must view the evidence in the light most favorable to the government, keeping in mind the right of the trier of fact to assess credibility and to draw reasonable inferences from the evidence. *See, e.g., Nelson v. United States*, 601 A.2d 582, 593 (D.C.1991) (citing cases). In a bench trial, we will not reverse a conviction for insufficient evidence unless appellant establishes that the trial court's

factual findings were "plainly wrong" or "without evidence to support [them]." D.C.Code § 17–305(a) (2001); *see Mihas v. United States*, 618 A.2d 197, 200 (D.C. 1992). The government need not negate every possible hypothesis of innocence. *Chaconas v. United States*, 326 A.2d 792, 798 (D.C.1974). Moreover, we do not draw any distinction between direct and circumstantial evidence. *Cash v. United States*, 700 A.2d 1208, 1211 (D.C.1997); *Chambers v. United States*, 564 A.2d 26, 30–31 (D.C. 1989); *see Garrett v. United States*, 642 A.2d 1312, 1317 (D.C.1994) ("That the government's case is largely circumstantial is of no import" (citation omitted)). In particular, specific intent, unless admitted by the defendant, must usually be proved by circumstantial evidence. *See Bowman v. United States*, 652 A.2d 64, 67 (D.C.1994).

■ Appellant's main contention is that the government failed to prove that he intended to convert the property to his own use. To obtain a theft conviction, the government had to prove that appellant specifically intended to deprive Mr. Cecchi of the right to his cellular phone—*i.e.*, that appellant intended to take and keep it for himself. *See Cash*, 700 A.2d at 1211. Appellant maintains that he had no such intent because he discovered the cellular phone in the course of conducting a permissible inventory search of Mr. Cecchi's car. We reject this argument because the trial court's finding that he had the requisite specific intent was based not on speculation, as appellant asserts, but on reasonable inferences drawn from the government's evidence of appellant's behavior.

First, because the car was parked on the street outside Mr. Cecchi's house where it would have been parked anyway, rather than impounded, the usual rationale for conducting an inventory search—to safeguard any personal property that might happen to be in an impounded car—was absent. Therefore, it was not unreasonable for the court to find appellant's intentions in conducting a purported inventory search to be quite suspicious, particularly when he could just as easily have handed the property for safekeeping to Mr. Cecchi's housemates, who were present and standing nearby. The suspicion is compounded by the fact that appellant never logged the items into the police property book, and indisputably began using the phone only a few hours after taking it from the console of Mr. Cecchi's car. Second, appellant's attempt to trade in the phone for a rebate on a new cell phone, rather than simply turning it in and asking that its owner be notified, betrayed his true intentions. *See Cash*, 700 A.2d at 1212 ("Evidence of a subsequent act, if connected in some material way with the event in question, can be probative of a prior state of mind"). Although appellant offered a different account of why he initially took the phone and what took place at the Sprint store, the court as fact-finder was entitled to disregard that testimony. *See, e.g., Bell v. United States*, 790 A.2d 523, 530–531 (D.C.2002). It simply cannot be said that the trial court's findings were plainly wrong.

■ Appellant contends nevertheless that he did not wrongfully seize Mr. Cecchi's phone, citing *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). In *Opperman* the Supreme Court created an exception to the Fourth Amendment's warrant requirement to allow police officers to search impounded vehicles and inventory any property found there. *Id.* at 369, 96 S.Ct. 3092. Appellant argues that, under *Opperman*, he had the legal authority to inventory Mr. Cecchi's property, and therefore he could not have wrongfully obtained the phone. We disagree. In the first place, appel-

lant's right to conduct an inventory search was questionable, since the car was not impounded but parked at the curb outside Mr. Cecchi's residence. *See Colorado v. Bertine*, 479 U.S. 367, 372–373, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (police were entitled to inventory property in car because they were "potentially responsible for the property *taken into their custody*" (emphasis added)); *Madison v. United States*, 512 A.2d 279, 281 (D.C.1986) ("the police are authorized to conduct an inventory search of a car *which is lawfully impounded*" (emphasis added)); MPD General Order, Series 602, Part I(B)(4) (May 26, 1972) ("If a vehicle is not placed on police department property or near a police facility, it is not a traffic impoundment and shall not be inventoried or searched in any way").

Even if appellant did have the right to conduct an inventory search, the "search" he conducted cannot be regarded as lawful under *Opperman*. Appellant's argument ignores the trial court's specific finding that he initiated the search with the wrongful purpose of stealing Mr. Cecchi's property. According to appellant's logic, *Opperman* would act as a shield for a police officer to conduct a sham inventory search. *Opperman* cannot be read to permit such police misconduct.

Appellant also relies on the decision of the District of Columbia Circuit in *United States v. Maple*, 357 U.S.App.D.C. 177, 334 F.3d 15 (2003) ("*Maple I*"). He asserts that *Maple I* "confirms the validity of my legal contentions regarding the right and authority to initially take lawful possession of the cell phone in [this] case ...." His reliance is misplaced for two reasons. First, the facts of *Maple* are quite different from the facts before us here. Second, and more significantly, the court that de-

cided *Maple* has very recently granted rehearing and vacated part II of the *Maple I* opinion, the part on which appellant bases his argument. *United States v. Maple*, 358 U.S.App.D.C. 260, 348 F.3d 260 (November 10, 2003)("*Maple II*").

The police officer in the *Maple* case, after arresting the defendant for a traffic violation, found a cellular phone on the floor of the defendant's car and decided to place it inside the console because he was "concerned that someone would see it and break into the car ...." *Maple I*, 357 U.S.App. D.C. at 179, 334 F.3d at 17. When he raised the lid of the console, he discovered a gun, which led to Maple's conviction of carrying a pistol without a license. The officer's action, the court held in *Maple I*, was not a search at all, but "a purely inadvertent byproduct of his opening of the console to place the cell phone inside." *Id.* at 182, 334 F.3d at 20 (footnote omitted). In *Maple II*, however, the court reconsidered this decision and held instead that the officer's action was indeed a search and, in the circumstances presented, violated the Fourth Amendment. "[T]he salient point is that whatever his good intentions, the officer failed to follow established police policy and procedures for securing a defendant's property." *Maple II*, 358 U.S.App.D.C. at ——, 348 F.3d at 265. Because appellant in the present case admitted that he did not follow established police procedures, *Maple II*, insofar as it is relevant at all, supports the proposition that his conduct was unlawful.

### III

■ Before trial, appellant filed a *pro se* "118 Motion to Expunge and Seal" his arrest record,[3] in which he stated that his

---

**3.** Appellant's motion is not part of the record on appeal, although it was admitted into evidence at trial as a government exhibit. The caption apparently refers to Super. Ct.Crim.

supervisor, Lieutenant Angela Cousins, informed him that Commander Crockett planned to "make an example out of Officer Cannon" and that she would appear in court to confirm this allegation. Appellant reiterated these assertions in his testimony during cross-examination. When the government called Lieutenant Cousins in rebuttal, however, she denied having ever made such statements to appellant. The next day the court decided to strike Lieutenant Cousins' testimony in its entirety as collateral and irrelevant, since appellant had made no claim of selective or vindictive prosecution. Defense counsel asked leave of court to present a surrebuttal witness, but the court denied that request. Appellant now argues that the trial court abused its discretion and violated his Sixth Amendment right of confrontation when it barred him from presenting a witness to rebut Lieutenant Cousins' testimony. He maintains that her testimony tainted his character and that the court erred in refusing to allow him to present a witness to repair his damaged credibility. This argument is without merit.

 The trial court "has a duty to exclude confusing and distracting evidence on collateral issues." *Carr v. United States,* 585 A.2d 158, 163 (D.C.1991) (citation omitted). Whether to allow or not to allow surrebuttal evidence is a matter committed to the discretion of the trial court, and its ruling either way will be reversed only for an abuse of discretion. *See Fitzhugh v. United States,* 415 A.2d 548, 551 (D.C.1980). Our inquiry is limited to whether the trial court's decision was "fair

and rational," *Taylor v. United States,* 661 A.2d 636, 643 (D.C.1995), and we hold in this case that it was. Because Lieutenant Cousins' testimony was stricken, there was nothing for appellant to rebut. Under such circumstances, allowing the defense to call a surrebuttal witness would have been a waste of time, especially in a bench trial, in which the judge was presumed to know the law and the proper use of evidence. *See, e.g., Johnson v. United States,* 636 A.2d 978, 981 (D.C.1994), *cert. denied,* 516 U.S. 1014, 116 S.Ct. 576, 133 L.Ed.2d 499 (1995).

## IV

 Citing *Williams v. United States,* 805 A.2d 919 (D.C.2002), appellant argues that the court rendered inconsistent verdicts when it found him guilty of theft but acquitted him of receiving stolen property ("RSP").[4] Appellant argues that this finding was legally inconsistent because the acquittal "negated the evidence of the theft." The government asserts that appellant misunderstands *Williams* and the doctrine of inconsistent verdicts. We think it is more accurate to say, however, that what appellant misunderstands is the trial court's ruling. The court acquitted him of RSP, not because there was insufficient evidence (which might lend support to his argument), but because he was guilty of theft. As a matter of both law and logic, appellant "cannot be convicted of both theft and receipt of stolen goods with respect to the same property." *Roberts v. United States,* 508 A.2d 110, 113 (D.C. 1986) (citation omitted); *see Byrd v. Unit-*

---

R. 118, which authorizes someone who has been arrested and "whose prosecution has been terminated without conviction and before trial" to file a motion (within specified time limits) requesting that his arrest records be sealed. On its face, Rule 118 would not apply to appellant, who went to trial and was convicted.

4. In *Williams* the trial court instructed the jury not to consider the charge of receiving stolen property if it found the defendant guilty of theft "because the two offenses were legally inconsistent." *Williams,* 805 A.2d at 920 n. 1.

*ed States,* 598 A.2d 386, 392 n. 13 (D.C. 1991) (en banc) ("the two offenses have generally been considered alternates, precluding conviction for both"). Because a defendant cannot be found guilty of receiving the same property that he stole, the trial court had no choice but to acquit him on the RSP charge when it found him guilty of theft.

## V

For the foregoing reasons, appellant's conviction is

*Affirmed.*

### ORDER

On consideration of appellant's petition for rehearing and request to stay issuance of mandate, appellee's response, and appellant's motion for leave to file the lodged reply, it is

ORDERED that appellant's motion for leave to file the lodged reply is granted and the Clerk is directed to file the lodged reply to response to petition. It is

FURTHER ORDERED that appellant's petition for rehearing is denied. It is

FURTHER ORDERED that footnote 1 of the opinion filed in this case on December 18, 2003, reported at 838 A.2d 293, is amended to read as follows:

The first theft count was for theft of a cellular phone, while the other two counts were based on appellant's use of the phone. Only the first theft count went to trial, along with the count that charged receiving stolen property; the other two counts were dismissed before trial. [Amendment incorporated for publication purposes.]