*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CM-1461

JAMES MILLER, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DVM-64-13)

(Hon. José M. Lopez, Trial Judge)

(Argued April 22, 2015                                    Decided May 21, 2015)

*Lisa D. Chanel* for appellant.

*Stephen F. Rickard*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Jason Park*, Assistant United States Attorneys, were on the brief for appellee.

Before GLICKMAN and BLACKBURNE-RIGSBY, *Associate Judges*, and NEWMAN, *Senior Judge*.

NEWMAN, *Senior Judge*:   Miller was convicted on three counts of

misdemeanor sexual abuse of a child, his now-teenage step-daughter, in violation

of D.C. Code § 22-3010.01 (2001).[1] He appeals, contending that the trial court committed constitutional error in preventing his expert witness from testifying because of a violation of the disclosure requirements of Super. Ct. Crim. R. 16 (b)(1)(C). He also contends that the evidence against him was insufficient. We affirm.

The case proceeded to a bench trial on July 11, 2013, before the Honorable José M. Lopez. The complainant J.G. testified to the charged incidents. Her mother also testified for the prosecution, corroborating elements of J.G.'s description of dynamics in the home, and also testifying to incriminating statements that Miller made to her after J.G. reported her abuse. On November 18, 2013, Judge Lopez convicted Miller, and sentenced him to 180 days of incarceration on each count, execution suspended, with counts 2-3 to run concurrently with credit for time served, and count 4 to run consecutively, without credit for time served.[2] Miller was also required to register as a sex offender, and to pay $150 to the Victims of Violent Crime Compensation Fund.

---

[1] An additional count was dismissed by the government at the close of its case-in-chief.

[2] Miller had apparently been incarcerated in January of 2013, and was released from pretrial detention on August 13, 2013, at the close of trial, and so his time served became a factor in sentencing.

## I. Exclusion of Expert Testimony

Miller argues that the trial court erred in refusing to let his expert witness testify concerning the likelihood of penetration injuries, in violation of the Sixth Amendment. He also alleges, albeit in passing, that "[t]he government was given sufficient notice . . . that the defense intended to call Dr. Rotolo as an expert witness." He fails to establish that the trial court erred either in its application of Super. Ct. Crim. R. 16, or in its interpretation of the scope of his Sixth Amendment right to present witnesses in his defense.

### A. Standard of Review

We review the trial court's interpretation of Rule 16 *de novo* because "a party's compliance with . . . Rule 16 disclosure requirements is a question of law." *Murphy-Bey v. United States*, 982 A.2d 682, 688, 689 (D.C. 2009). If a defendant violates Rule 16, the trial court has discretion to impose sanctions, including exclusion of evidence not disclosed, and we review the decision to do so for abuse of discretion. *Id.* at 689.

**B. Waiver**

The prosecution takes the position that "Appellant does not appear to contend that his expert notice complied with the specific requirements of Rule 16," and thus any such argument should be waived, citing *Walker v. United States*, 982 A.2d 723, 742 n.36 (D.C. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation omitted). Miller does make a limited argument on this point. After an extended discussion of the notice that his trial counsel provided the prosecution, he claims that "[t]he government was given sufficient notice prior to the July 2013 trial that the defense intended to call Dr. Rotolo as an expert witness on behalf of Miller." That is the entirety of Miller's argument on Rule 16, if indeed he intended to make that argument–he does not cite to Rule 16 itself, and could be making the "sufficient notice" point as part of his Sixth Amendment argument.

But even if Miller has waived the question of compliance with Rule 16, we must still consider whether excluding the testimony of his expert witness comports with the Sixth Amendment. And even if he is deemed to have adequately raised the point, for the reasons that follow, his Rule 16 argument

fails on the merits. Accordingly, although Miller may have waived any argument that he complied with Rule 16 in this case, we need not address the question of waiver in deciding this case.

**C. Rule 16**

Rule 16 requires defendants to "disclose to the government a written summary of testimony of any expert witness that the defendant intends to use as evidence at trial," upon request, if the defendant had requested that the government made the same disclosure. D.C. Super. Ct. R. Crim. P. 16 (b)(1)(C). Once the disclosure obligation is triggered, the defendant's summary of the expert testimony must "describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications." *Id.* Miller made such a request, and the government made a reciprocal request, thus triggering his obligation under 16 (b)(1)(C).

We have held that where the expert disclosure constitutes "a list of topics that fails to summarize the expert's expected testimony, [and] fails to describe the expert's actual opinions, . . . [it] cannot be considered an adequate disclosure." *Murphy-Bey v. United States*, 982 A.2d 682, 688 (D.C. 2009).

Here, Miller's letter describing Dr. Suzanne Rotolo's expected testimony stated, in most pertinent part, that "I expect that Dr. Rotolo will testify that if a child of the complainant's age reported forced penetration in the manner that the complainant has previously described, this [activity, if it occurred] would increase the likelihood of penetration injury."[3]  This summary does not communicate the substance of what Dr. Rotolo's opinion would be concerning the actual likelihood of penetration injury in P.G.'s case, where she reported her assault two years after it allegedly occurred.  This letter thus does not give the government sufficient notice of Dr. Rotolo's actual opinions, such that they could prepare for her testimony.

We have held this type of notice insufficiently specific before.  *Murphy-Bey v. United States*, 982 A.2d 682, 685 (D.C. 2009), was an aggravated assault case in which the defendant claimed self-defense against an allegedly violent victim under the influence of crack cocaine and marijuana.  Murphy-Bey's defense counsel told the government in a pre-trial letter that "Dr. Norris may testify either

_____

[3]  Miller relies upon a notice letter, included as Appendix 5 to his brief, dated May 21, 2013.  However, the government claims that this letter is not a part of the appellate record, and that the only letter notifying the government of Dr. Rotolo's proposed testimony is dated July 15, 2013.  This July 2013 letter is apparently the only letter that defense counsel remembered when arguing the point with the judge on July 22nd.  In any case, the text of the two letters is identical, and so regardless of whether the government received notice one week or one month before trial, the substance of the notice they received is inadequate.

by providing information or by rendering an opinion about . . . the effects of Crack Cocaine and psychiatric drugs [and] marijuana on the human mind, the combination of their use, the length of time of their effects[,] as well as the long and short-term effects of their use." *Id.* at 687 (internal quotations omitted) (brackets in original). When the government complained that the letter was not sufficiently specific, the defense stated that "Dr. Norris will be able to offer an opinion that while under the influence of the illegal drug crack cocaine and coupled with the psychotic schizophrenic drugs, a person would be frantic, nonsensical, agitated, overly hyper, and in a state of mania." We stated that "[t]his purported disclosure comes closer to summarizing Dr. Norris's expected testimony and her opinions, but it clearly still does not provide the bases and reasons for those opinions, nor any details of them, and therefore hindered the government's ability to prepare for trial or cross-examine of Dr. Norris." *Murphy-Bey*, 982 A.2d at 689 (emphasis added). Our conclusion was that "[t]herefore, appellant did not comply with Rule 16 and the trial court did not err in so finding."

In concluding as we did in *Murphy-Bey*, we drew upon our similar decision in *Ferguson v. United States*, 866 A.2d 54, 57 (D.C. 2005), in which Ferguson's self-defense claim came into conflict with evidence that the victim had been shot in the back. In *Ferguson*, the defense's letter to the government "identifying Dr. Anderson as [the government's] medical expert [] point[ed] out that he would

'testify regarding (1) the gunshot wounds suffered by Mr. White [the victim] on [the date of the shooting], (2) the severity of the physical injuries which resulted from those gunshot wounds, and (3) the medical care provided to Mr. White following the shooting." *Murphy-Bey v. United States*, 982 A.2d 682, 688 (D.C. 2009) (internal quotation marks omitted) (brackets in original) (citing *Ferguson*, 866 A.2d at 64). We held that the letter "could not be interpreted, even remotely, as a written summary of the testimony the doctor would give at trial. Nor did that letter describe [Dr. Anderson's] opinions . . . as Rule 16(a)(1)(E) requires." *Ferguson*, 866 A.2d at 64 (internal quotation marks omitted) (brackets in original).

Although the letter submitted on Miller's behalf can be generously read as stating that Dr. Rotolo would opine that anal penetration of the type that J.G. reported suffering would increase the likelihood of penetration injury symptoms, this notice, like the notice in *Murphy-Bey*, does not provide the government with the necessary details about *how* likely penetration injury would be, two years after the trauma, and *why* Dr. Rotolo might advance such an opinion. This inadequacy in Miller's notice – allegedly given for the first time one week before the fifth trial date – thus "hindered the government's ability to prepare for trial or cross-examin[ation]." *Murphy-Bey*, 982 A.2d at 689. "Therefore, appellant did not comply with Rule 16." *Id.*

"A trial court may impose sanctions for violating Rule 16," *Murphy-Bey*, 982 A.2d at 689, including "prohibit[ting] the party from introducing evidence not disclosed." D.C. Super. Ct. R. Crim. P. 16 (d)(2). We review the trial court's decision in this matter for abuse of discretion. *Murphy-Bey*, 982 A.2d at 689. "Where there has been a failure to make proper disclosure under Rule 16, among the factors which the trial court must consider and weigh are: (1) the reasons for the nondisclosure; (2) the impact of the nondisclosure on the trial of the particular case; and (3) the impact of a particular sanction on the proper administration of justice in general." *Ferguson*, 866 A.2d at 59 (internal quotation marks omitted).

Here, (1) the defendant proffered no good reason for being unspecific in predicting Dr. Rotolo's testimony, permitting a reasonable inference that the testimony would be of no significant import. (2) Although defense counsel offered to push the trial back to another date, or to delay the defense case in order to allow adequate time for the prosecution to prepare, the prosecution had already faced numerous delays in the trial, forcing them to have the complainant – a young alleged sex assault victim – come to the courthouse many times, and at least one of these delays had been explicitly charged to the defense. Finally, (3) the exclusion of Dr. Rotolo's testimony has a small, though negative impact on the administration of justice. The evidence against Miller is strong, and from what we can glean from the defense notice letter, Dr. Rotolo's testimony about whether a

complainant in J.G.'s situation would have sustained anal penetration injuries visible two years later likely would not have had a meaningful impact on the outcome of the trial.[4] We conclude that the trial court did not abuse its discretion in excluding her testimony. *See Johnson v. United States*, 398 A.2d 354, 361-67 (D.C. 1979).

**D. The Sixth Amendment Right to Present a Defense**

Miller also claims that the "trial court's erroneous exclusion of defense evidence constitutes a violation of the defendant's Sixth Amendment rights." "Under the Sixth Amendment, a criminal defendant is guaranteed the right to offer testimony of witnesses in his favor." *Feaster v. United States*, 631 A.2d 400, 405 (D.C. 1993); *see also Washington v. Texas,* 388 U.S. 14, 23 (1967) ("The Framers of the Constitution did not intend [in the Sixth Amendment] to commit the futile act of giving to a defendant the right to secure the attendance of witnesses whose testimony he had no right to use.") "[T]he Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to

---

[4] Although the trial court appears to have based its ruling primarily on the timing of the Rule 16 response, we need not decide whether that alone would suffice to sustain the ruling. Here, the content of the Rule 16 disclosure is inadequate as a matter of law. Thus, we need not consider remanding on that point. *Johnson v. United States*, 398 A.2d 354, 361-67 (D.C. 1979).

promote." *Holmes v. South Carolina*, 547 U.S. 319, 325-26 (2006) (the constitutional right to "a meaningful opportunity to present a complete defense . . . is abridged by evidence rules that . . . are arbitrary or disproportionate to the purposes they are designed to serve.").

Rule 16 serves a "legitimate purpose," and the exclusion of defense evidence in this case was not "disproportionate to the ends that [Rule 16 is] asserted to promote." *Id.* Certainly the absence of visible injury, if such would exist that long afterwards if she in fact suffered the trauma she described, would have helped to establish Miller's innocence. However, due to the nature of the notice given, we cannot discern what Dr. Rotolo would have testified, and whether that evidence would have been of meaningful significance.

The discovery and trial preparation process in Miller's case had dragged on and on. J.G. had been forced to come to court on multiple occasions, and then been sent home each time without testifying. Not only was the notice deficient in its content, its timing also posed an impermissible burden on the government. Finally, defense counsel all but conceded in closing arguments that if J.G. had been raped as she alleged, two years earlier, forensic investigation would not have been able to verify her story. In light of these

facts, we cannot say that enforcing Rule 16 to bar Dr. Rotolo's testimony was "arbitrary," or "disproportionate to the ends that [Rule 16 is] asserted to promote." *Holmes*, 547 U.S. at 326. Accordingly, the trial court's decision to exclude Dr. Rotolo's testimony did not violate the Sixth Amendment. *See Chapman v. California*, 386 U.S. 18 (1967).

## II.    Denial of the Motion for Acquittal

Miller's remaining claim is that the evidence is insufficient to support his convictions, and thus that the trial court erred in denying his motion for judgment of acquittal.[5]   In reviewing sufficiency challenges, we view the evidence "in the light most favorable to the government, giving full play to the right of the [fact-finder] to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *In re R.S.*, 6 A.3d 854, 859-60 (D.C. 2010) (brackets in original). "The government need not negate every possible hypothesis of innocence." *Cannon v. United States*, 838 A.2d 293, 297 (D.C. 2003). "It is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt

---

[5]   While "[w]e review a trial court's denial of a motion for judgment of acquittal *de novo*," the underlying determination is whether the evidence was sufficient to sustain the verdict, and thus our standard of review is identical to that applied to a direct sufficiency challenge. *Johnson v. United States*, 756 A.2d 458, 461 (D.C. 2000); *see also Curry v. United States*, 520 A.2d 255, 262-63 (D.C. 1987).

beyond a reasonable doubt that this court can reverse a conviction." *Gonzalez v. United States*, 859 A.2d 1065, 1067 (D.C. 2004).

Here, J.G.'s credible testimony of Miller's assaultive behavior, combined with the corroboration of her mother's testimony, and the incriminating statements that J.G.'s mother heard Miller make, constitute sufficient evidence from which a reasonable factfinder could infer beyond a reasonable doubt that Miller had three times committed misdemeanor sexual abuse of a child. *See* D.C. Code § 22-3010.01 (2001). Accordingly, the trial court properly denied Miller's motion for judgment of acquittal.

*Affirmed.*